# RIES v. KIRKEGAARD.

PATENTS; INTERFERENCE; APPEALS.

1. Where the question of priority of invention in an interference proceeding is involved in some doubt, the rule is that the concurrent

judgments of the Patent Office tribunals will not be disturbed by this court on appeal; to justify reversal, plain error must be shown in a conclusion of fact.

2. Where, in an interference proceeding involving an improvement in crown seal bottle stoppers, the senior party, who, besides being an inventor, was a patent attorney, claimed that, while visiting the machine shop of the junior parties, who were constructing a machine he had invented, he suggested to them the invention of the issue as an improvement upon a bottle cap patented by one of them, but it appeared that, immediately after the construction of the improved bottle stopper, the senior party entered into a contract with the junior parties to sell the invention for them for one third of the proceeds of sale, he to bear any expense, and that, failing to effect a sale, he filed his application, it was *held* that the effect of the contract was an acknowledgment by the senior party of the ownership by the junior parties, and that they were entitled to an award of priority; and also that an attempt by the senior party, who drew the contract, to give it a restrictive, if not concealed, meaning, could not be received with favor.

No. 416.    Patent Appeals.    Submitted May 16, 1907.    Decided December 11, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.    *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles S. Champion* for the appellant.

*Mr. William M. Stockbridge* and *Mr. William F. Bissing* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding.

The issue of the interference was declared in ten counts. Without setting them out, it is sufficient to say that the inven-

tion of the issue relates to improvements in crown seal bottle stoppers, and consists substantially of a metallic cap having a beaded splitflange, a divided ring inclosed in the bead, and a lever attached to one end of the ring and having a narrow excentric slot engaging the other end of the ring. When the lever is moved in one direction, the ring is contracted and the flange forced against an inclined shoulder near the mouth of the bottle, causing the cap to firmly engage it. By moving the lever in the opposite direction, the ring and flange are expanded, and the cap readily disengaged from the bottle.

Elias E. Ries, the senior party, who filed application April 13, 1904, claimed conception between 1884 and 1887, drawings and disclosure in September, 1903, and reduction to practice in October, 1903. George Kirkegaard and Fridtjof Jebsen, who filed April 15, 1904, claimed conception, disclosure, construction, and reduction to practice December 4, 1903. The tribunals of the Patent Office, unanimous in their award of priority to Kirkegaard and Jebsen, rejected the evidence of Ries's earliest alleged conception as wholly insufficient to establish his claim. In this they were undoubtedly right.

The real issue was whether Kirkegaard and Jebsen were real inventors, or derived their knowledge from the disclosures of Ries. Kirkegaard was the owner of a machine shop, and had made some prior inventions. Ries was an inventor of a considerable number of devices, largely electrical, and was, moreover, a patent solicitor. While not a patent lawyer, he had prepared statements in interference. He conducted the examination of witnesses, on his own behalf, and with some skill. He was on friendly terms with Kirkegaard, and often engaged him to construct machines for him. During November and December of 1903, the latter was constructing a complicated machine for Ries, who was often in the shop. During this time Kirkegaard was working on a bottle cap, for which he applied for a patent on December 16, 1903. Patent thereon was issued to him April 26, 1904. The invention of the issue is an improvement upon the patented construction, which appellees claim was suggested by Jebsen. Both stoppers include a metal cap hav-

ing a slotted and flexible edge, a clamping ring for this edge, and a cam lever for drawing the ring tightly around, thereby compressing the flexible edge of the cap into a groove upon the bottle neck.    In the patented construction the clamping ring is made of one piece of wire, has two free ends, and rests loosely on a flange or bead formed on the edge of the cap; there is also a single clamping lever, with a cam engaging a free end of the clamping ring and adapted to contract but not to expand it.    The clamping ring of the improvement, of the issue, is a two-part wire inclosed in the bead of the cap, and having four free ends; the clamping lever is in the form of a bail, and has a cam slot at each of its ends that is capable of both clamping and expanding the ring.   The patented device was liable to become dismembered when not in use.    This was obviated in the improved structure by enclosing the two-part wire in a bead of the flange, and introducing the bail form of clamping lever.    The substitution of a double cam action secured both contraction and expansion as desired.   Ries saw the patented construction, and claims to have substantially disclosed his former invention of the improvement.    The appellees claim that, upon seeing the same construction, Jebsen suggested the improved one, which Kirkegaard worked out.    Hence the application as joint inventors. The case turns on this disputed point.    The several tribunals, after a careful review of all the evidence, which it is unnecessary to repeat, came to the conclusion that Kirkegaard and Jebsen were the actual inventors.

There are some circumstances disclosed by the testimony, particularly as regards dates of drawings and work of construction, which involve this question in some doubt; and in such cases it is the settled rule that the concurrent judgment of the Office tribunals will not be disturbed.    To justify reversal, plain error must be shown in such a conclusion of fact.

Any doubt as to the point, however, is settled by subsequent transactions between the parties.    Immediately after the construction, Ries entered into a contract with Kirkegaard and Jebsen to attempt the sale of the invention.    If successful he was to have one third of the proceeds of sale; the consummation

he assumed at his own expense. He took sample caps and exhibited them to a manufacturer, but failed to effect a sale. Ries, who, as has been remarked, was a patent solicitor, drew this contract. Consequently, his attempt to give it a very restrictive, if not a concealed, meaning, does not come in good grace. The substantial effect of the contract was an acknowledgment of the ownership by the other parties, not only of the patented construction, but the improvement of the issue. Ries admitted that he was under the impression at the time that the appellees had filed their application for patent for the improvement. In this he was in error. Having failed to effect the sale, he filed his own application, which was followed two days later by the appellees. Ries's explanation of his motives in entering into this agreement is far from satisfactory. Being familiar with the patent law, both as inventor and solicitor, he must be presumed to have known, when attempting to sell the invention, that a patent to appellees for advice of which he and not they were the actual inventors would be void.

The Commissioner was right in deciding the question of originality in favor of Kirkegaard and Jebsen; and, without further discussion, his decision will be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents as the law requires.                     *Affirmed.*